UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

******************************************************************************************

In re:

A.P.I., INC.,                                    ORDER ON PETITIONER'S
                                                 MOTION FOR ABSTENTION
        Debtor.                          AND REMAND

*******************************************

FARICY LAW FIRM, P.A.,

        Petitioner,                      BKY 05-30073

v.                                               ADV 15-3096

A.P.I., INC. ASBESTOS
SETTLEMENT TRUST,

        Debtor.

******************************************************************************************

At St. Paul, Minnesota
September 9, 2015.

        In early 2005, Debtor A.P.I., Inc. filed for relief under Chapter 11. It did so because it was faced with a multi-part problem: multiple, substantial claims in litigation against it, for damages based on plaintiffs' exposure to asbestos in materials sold or installed by it; at least one very large unsatisfied judgment on such liability; and substantial contests with its liability insurers over the continuation of coverage for such liability. The Bankruptcy Code made certain very specialized remedies available to the Debtor and it sought them. *See In re A.P.I., Inc.*, 331 B.R. 828 (Bankr. D. Minn. 2005).

        On December 6, 2005, the court confirmed the Debtor's plan of reorganization. Under the plan, a trust for the benefit of claimants on asbestos-related claims was established. Provisions were made for the funding of the trust by the Debtor from its assets and by insurers cashing-out their residual coverage liability. Asbestos-exposure claims against the Debtor and against settling insurers were channeled into the trust. And, procedures for the administration of

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *09/09/2015*
Lori Vosejpka, Clerk, By JRB, Deputy Clerk

the trust and the processing and payment of claims were established. The Chapter 11 case was closed on February 29, 2008.

In June, 2015, the proceeding at bar was commenced in the Minnesota State District Court for the Second Judicial District, Ramsey County. The respondent is the trust established under the Debtor's plan (henceforth, "the A.P.I. Trust" or "the Trust"). The petitioner (henceforth, "the Faricy Firm" or "Faricy") is a law firm that seeks relief against the A.P.I. Trust on an assertion that they once had an attorney-client relationship.

After this proceeding was commenced, the Debtor's Chapter 11 case was reopened on application of the Trust. The reopening enabled the Trust to remove this proceeding to this court pursuant to 28 U.S.C. § 1452(a), under the Trust's assertion of the federal bankruptcy jurisdiction.

The Faricy Firm promptly filed a motion for abstention and remand pursuant to 28 U.S.C. §§ 1334(c)(1) - (2) and 1452(b). The motion was called for hearing on August 26, 2015. Justin P. Weinberg, Briggs and Morgan, P.A., appeared for the A.P.I. Trust. John H. Faricy, Jr., Faricy Law Firm, P.A., appeared for the Faricy Firm.

### BACKGROUND: PARTIES' POSITIONS

The Faricy Firm commenced this proceeding under a document entitled "Petition for Attorneys' Lien Pursuant to Minn. Stat. § 481.13." The Firm alleges generally that it provided substantial legal services for the Debtor and for the A.P.I. Trust on matters of liability insurance coverage, under a retention that began in August, 2002. It pleads that the engagement got under way with the commencement of coverage litigation on the Debtor's behalf against several liability insurers--in particular, for the purposes of the matter at bar, the Home Insurance Company. Faricy did continue to represent the Debtor on this sort of matter after the Chapter 11 filing.[1] Faricy asserts that it carried forward in the same matters after the confirmation of the Debtor's plan, to represent the A.P.I. Trust as successor to the Debtor on modified terms for compensation.

---

[1] Faricy's employment as special counsel was initially approved by order entered on February 8, 2005 [BKY 05-30073, Dkt. No. 138], and then by subsequent order entered on April 29, 2005 [Dkt. No. 244] as a result of an application by the Debtor to expand the scope of Faricy's employment.

2

Faricy then enumerates the services said to have been rendered for the A.P.I. Trust on claims against the Home Insurance Company and that insurer's later liquidator. After that, it is alleged that the A.P.I. Trust "terminated its relationship with" the Faricy Firm on August 31, 2012; and that, some two and a half months later, the A.P.I. Trust executed a settlement agreement that quantified and allowed the A.P.I. Trust's claims in the Home liquidation proceeding.[2]

Then, it is pled, in late 2014 "the [A.P.I.] Trust wrote to [the] Faricy [Firm] refusing to compensate [it] for its services making a number of false claims including that [it] never represented the Trust with respect to its claims as to Home." Faricy also alleges that the A.P.I. Trust "took the unfounded position that [the] Faricy [Firm] expended 'no time and labor' on the Home claim."

Faricy filed its petition in the Ramsey County District Court in mid-June, 2015. It requests declaratory relief under Minn. Stat. § 481.13 and common-law and equitable theories, to the effect that it has two "lien[s] for compensation against the [A.P.I.] Trust." One is identified to a sum certain ($1,075,000.00) and one is "for thirty-three percent of any additional amounts that the [A.P.I.] Trust is entitled to receive or receives from the Home Liquidator . . ."

On July 29, 2015, the A.P.I. Trust removed Faricy's lien proceeding to this court. In its notice of removal, the Trust asserted that "[t]he Bankruptcy Court has subject matter jurisdiction over" Faricy's claims to an attorney's lien "pursuant to 28 U.S.C. § 1334."[3] The Trust then asserted core-proceeding status for this action, citing 28 U.S.C. §§ 157(b)(2)(A),(K), and (O).

---

[2]Per the pleading, the Home Insurance Company had gone into liquidation in the New Hampshire state courts by then.

[3]This assertion is misspoken. Under 28 U.S.C. §§ 1334(a) - (b), the United States District Court is the body that has original jurisdiction over all cases under the Bankruptcy Code; all civil proceedings arising under the Code; and all civil proceedings arising in or related to bankruptcy cases under the Code. Under 28 U.S.C. § 157(a) and Loc. R. Bankr. P. (D. Minn.) 1070-1, all such cases and proceedings are referred to the bankruptcy judges for the District of Minnesota. They collectively "constitute a unit of the district court," 28 U.S.C. § 151, and exercise judicial authority under the district court's jurisdiction. Under statute and applicable rule, the removal of an action or proceeding from a state court to the bankruptcy jurisdiction of the federal courts is made "directly" to the bankruptcy court, notwithstanding the facial reference in 28 U.S.C. § 1452(a) to the district court as the recipient of a removal. *See In re Fifty Below Sales & Marketing, Inc.*, 490 B.R. 885, 890 n.9 (Bankr. D. Minn. 2013); *In re Fulda Indep. Co-op*, 130 B.R. 967, 976 (Bankr. D. Minn. 1991).

3

To bolster its assertion of jurisdiction, the Trust alleged that the "issues are important to the administration of the confirmed plan" in the underlying bankruptcy case.

Shortly after that, the A.P.I. Trust filed its response to Faricy's petition [Dkt. No. 3]. This document has many responsive and affirmative allegations. Most of them go to the underlying issue of liability for the attorney's fees to which the Faricy Firm asserts an entitlement. The major thrust of the response is that an attorney's lien may not be imposed because the Trust does not owe any fees that would be secured by a lien. However, the allegation most directly related to the purpose of the petition is also most pertinent to the motion at bar. It is found in the "Affirmative Defenses" of the Trust's response:

> 31. Faricy's Petition for an Attorney's Lien is barred by an injunction ordered by this Court [i.e., the bankruptcy court] wherein no lien, of any kind, can be placed against the Trust or property of the Trust.

The motion at bar followed quickly.

The Faricy Firm argues that the removal of this matter was "not well-taken" and abstention (toward a return to the Ramsey County District Court) is imperative. It argues reasons that go back to two points in the recounted history of these parties' engagement.

First, Faricy argues, the Trust--and not the Debtor--was its client for the work it performed on coverage matters involving the Home Insurance Company that resulted in the settlement and a subsequent payment from the Home Liquidator to the A.P.I. Trust. Second, it insists, its right to fees arose under an agreement that it and the A.P.I. Trust entered on January 7, 2009--three-plus years after the Debtor's plan was confirmed and nearly a year after this case was closed.

In the alternative, the Faricy Firm urges abstention if there is federal jurisdiction, under the mandate of 28 U.S.C. § 1334(c)(2) or pursuant to 28 U.S.C. § 1334(c)(1) in deference to the Minnesota courts' application of the substantive law of their forum.[4]

---

[4]Faricy argues for abstention on two different platforms. One hearkens backs to a decision made by the United States district court in 2005, to abstain from hearing the Debtor's then-pending, broader coverage action that certain insurers had removed from the Ramsey County District Court. In Faricy's

The Trust's response falls back on the confirmed plan's boilerplate for retention of "jurisdiction":

> . . . the Bankruptcy court shall retain jurisdiction to the extent authorized by 28 U.S.C. §§ 157 and 1334(b) for the following specific purposes after Confirmation:
>
> . . .
>
> d) to enforce and interpret the terms and conditions of the Plan Documents;
>
> (e) to enter such orders or judgments, including, but not limited to, injunctions (i) as are necessary to enforce the title, rights, and powers of the Debtor, and the Trust and (ii) as are necessary to enable holders of Claims to pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise, including, but not limited to, Bankruptcy Court orders;
>
> . . .
>
> (i) to hear and determine any cause of action in any way related to the Plan Documents or the transactions contemplated thereby, against the Debtor, APi Group, Inc., the Committee, the Trust, the Trustees, or the Legal Representative and their respective officers, directors, stockholders, employees, members, attorneys, accountants, financial advisors, representatives, and agents;
>
> . . .
>
> (k) to hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;
>
> . . .
>
> (n) to hear and determine any other matters related hereto, including the implementation and

---

view, that decision became "the law of the case" and now binds this court to abstain from and remand the matter at bar. This invocation of the law-of-the-case doctrine is probably off-base from the posture of the two separate proceedings and the fundamental difference in the interests and issues entailed by both. Faricy seems to think that the doctrine compels the ejection of every last controversy traceable in the abstract to a primal source, the Debtor's asbestos-related liability. That notion grossly overreaches. But this argument, as breathily technical as it is presented, can be set aside. Applying the analysis for jurisdiction, abstention, and remand directly to these parties' actual controversy gets Faricy where it wants to be.

5

> enforcement of all orders entered by the Bankruptcy Court in this Reorganization Case;
>
> . . .
>
> q) to enter such orders as are necessary to implement and enforce the Injunctions and the other injunctions described herein, including, without limitation, orders extending the protections afforded by section 524(g) to the Settling Asbestos Insurance Companies.

Third Amended Plan of Reorganization of A.P.I. Inc. [BKY 05-30073, Dkt. 492], 38-39.

The Trust maintains it has an absolute defense to Faricy's demand for the imposition of an attorney's lien. It traces the defense to certain provisions in the order under which the Debtor's plan confirmed, and the underlying definitions in the plan itself:

> . . . All Entities which have held or asserted, which hold or assert, or which may in the future hold or assert any Third Party Claim shall be permanently stayed, restrained, and enjoined, from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments or recovery with respect to any such Third Party Claim, including, but not limited to:
>
> . . .
>
> > (C) creating, perfecting, or enforcing any Lien of any kind against the Protected Party, or the property of any Protected Party, with respect to any such Third Party Claim . . . .

Order Confirming Third Amended Plan [Dkt. No. 495],[5] 14-15; and

> 1.104. "Protected Party" means any of the following parties:
>
> . . .
>
> > (b) the Trust, and any of its Trustees, officers, directors, agents, employees, representatives, advisors, financial advisors, accountants and attorneys . . .

---

[5] In all further references, "Confirmation Order."

6

Plan [Dkt. No. 492],[6] 13.

Essentially, the Trust argues that Faricy can not get an adjudication on the lien it asserts, because this confirmation-related injunction permanently bars it from asserting, obtaining, or enforcing any such lien. And more to the point to the motion at bar, the Trust argues that it has a right to have that defense determined in the federal forum of bankruptcy, because the defense "implicates the interpretation and application of the injunction set forth in the [Debtor's] Plan." As the Trust would have it, the court that confirmed the plan is both the best-suited to perform those functions and the only proper one to do so.

## DISCUSSION

Usually, the treatment of any motion like the Faricy Firm's has two stages: abstention and then remand. *In re Fifty Below Sales & Marketing, Inc.*, 490 B.R. at 891 n.12. If the first expedient--abstention--is warranted, the second stage is more perfunctory, "the overt ejection of [the proceeding] from the forum of removal." *Id.*

The analysis on abstention has several component inquiries. The threshold is a compound question: does the bankruptcy jurisdiction lie as to the proceeding in question; and if so, which subset of the jurisdiction applies? Then, if there is bankruptcy jurisdiction, the second question: *must* that jurisdiction be exercised at its proponent's instance? If the answer to that is in the negative, the third question is: *should* the jurisdiction be relinquished and the matter commended to another forum, on the statutory considerations?

### Jurisdiction, In General

The bankruptcy jurisdiction of the federal courts enables the judicial administration of remedies provided under the Bankruptcy Code, a federal statute. Bankruptcy's remedies lie in favor of both debtors (discharge of debt, reorganization, debt adjustment) and creditors (administration of an estate from which creditors' claims are to be paid during the bankruptcy process).

---

[6] In all further references, "Plan."

The grant of jurisdiction begins with bankruptcy cases themselves--as to which the federal jurisdiction is exclusive.[7] 28 U.S.C. § 1334(a); *In re Skyline Woods Country Club*, 636 F.3d 467, 471 (8th Cir. 2011). Then, "original but not exclusive" federal jurisdiction is granted, as to "civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b). The component "civil proceedings" within a bankruptcy case under federal jurisdiction are divided between core proceedings, 28 U.S.C. §§ 157(b)(1) - 2, and proceedings that are "not a core proceeding but that [are] otherwise related to a case under" the Bankruptcy Code, 28 U.S.C. § 157(c)(1). *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995).

Core proceedings are statutorily enumerated in 28 U.S.C. § 157(b)(2). They all revolve around the two broad classes of relief accorded during the bankruptcy process, to debtors on the one hand and to creditors on the other. *In re Barsness*, 398 B.R. 655, 658 (Bankr. D. Minn. 2008) (citing facial language of enumeration in 28 U.S.C. §§ 157(b)(2)(A) - (P)).[8] The Eighth Circuit has cautioned against giving a broad scope to core-proceeding status, to avoid breaching Article III's structural limitations on the exercise of the judicial power of the United States, i.e. plenary federal judicial power. *In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1132 (8th Cir. 1988). *See also In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 982 (D. Minn. 1989).

On the other hand, related-proceeding jurisdiction has long been described as "broad." *E.g.*, *Cutcliff v. Reuter*, 791 F.3d 875, 881-882 (8th Cir. 2015); *Buffets, Inc. v. Leischow*, 732 F.3d 889, 894 (8th Cir. 2013); *In re Farmland Industs., Inc.*, 567 F.3d at 1019; *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988). It is "met if the proceeding 'could alter the debtor's

---

[7]Simply stated, if one wishes to file for bankruptcy under federal law, one must commence a case in the federal courts; and the bankruptcy case itself stays in a federal court to its end.

[8]From a different perspective, core proceedings are described as "those which arise only in bankruptcy or involve a right created by federal bankruptcy law." *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d at 773. As such, most core proceedings in the statutory enumeration dovetail directly into two of the three statutory classes of bankruptcy jurisdiction--"arising under" jurisdiction, over "civil proceedings arising under" the Bankruptcy Code; or "arising in" jurisdiction, over "civil proceedings . . . arising in . . . cases under" the Bankruptcy Code. *In re Farmland Industs., Inc.*, 567 F.3d 1010, 1017-1018 (8th Cir. 2009).

rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate.'" *Cutcliff v. Reuter*, 791 F.3d at 881-882; *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d at 774; *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987). *See also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995); *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 958 (8th Cir. 2005); *Kocher v. Dow Chemical Co.*, 132 F.3d 1225, 1230-1231 (8th Cir. 1997); *Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993) *In re Titan Energy, Inc.*, 837 F.2d at 330 (all opining that related-proceeding jurisdiction may lie where the outcome of a proceeding "could conceivably have any effect" on the administration of the bankruptcy estate).

But, to reemphasize: one way or another, it is clear that the bankruptcy jurisdiction only encompasses proceedings that bear on the remedies that are administered *in bankruptcy*, the federal process for resolution of broader financial distress that necessarily must have a closed end at some point in relation to such resolution. *In re Farmland Industs., Inc.*, 567 F.3d at 1019 (citing *Celotex Corp. v. Edwards*, 514 U.S. at 308 n.6 for proposition that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor"; and *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d at 774, for proposition that related-proceeding jurisdiction requires "some nexus between the civil proceeding and the Title 11 case").

**Jurisdiction, In Specific**

In defending its removal, the A.P.I. Trust makes much of the provisions for "retention" of jurisdiction in the Debtor's Plan and the Confirmation Order. However, the Plan's own provisions silently reflect the black-letter precept that parties to a legal proceeding cannot create federal jurisdiction by their own declaration or stipulation.[9] The Plan provides for a retention of jurisdiction, but only "to the extent authorized by 28 U.S.C. §§ 157 and 1334(b) . . . ." *Supra*, 4-5.

---

[9] *E.g.*, *State of S.D. v. Hazen*, 914 F.2d 147, 149 (8th Cir. 1990) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 7-8 (1978)). There must be an objective basis under Title 28 for the federal courts to assume jurisdiction. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003).

Obviously, then, any proceeding for which "retained" jurisdiction within the Debtor's bankruptcy case is asserted at this late date, must independently fall within the bankruptcy jurisdiction, for this court to assume judicial authority over it. Under the circuit-level precedent summarized earlier, this proceeding does not.

First, as to core-proceeding status: there is no longer a bankruptcy estate in administration in the Debtor's case. There has not been for nearly a decade. Confirmation Order, 4 (Debtor to be "re-vested with all of the assets and property of its former chapter 11 estate," upon effective date of Plan).

The A.P.I. Trust and its corpus do not substitute for a bankruptcy estate. *This* trust was funded in large part by assets that were once property of the Debtor's bankruptcy estate, i.e. assets of the Debtor and the rights to indemnification under liability insurance policies owned by the Debtor, later monetized into funds paid by insurers in consideration for the protection of the channeling injunctions. But once paid into the Trust, those assets became the property of a different entity--one established under Minnesota law,[10] not § 541 of the Bankruptcy Code[11]--and one administered by a trustee empowered under the same state-law governance and not having fiduciary status directly imposed by federal statute.[12] The only bankruptcy estate cognizable in the Debtor's case ceased to exist after the Plan was consummated on its effective date and the A.P.I. Trust was activated.

---

[10] Confirmation Order, 5 (Trust to be established on effective date of Plan, "in accordance with the Plan Documents"); Plan, 12 (defining "Plan Documents" to include "the Trust Documents") and 16 (defining "the Trust Documents" to include "the Trust Agreement" and "the Trust Agreement" as "that certain API Asbestos Settlement Trust Agreement . . . attached as an Exhibit to the Plan"); A.P.I., Inc. Asbestos Settlement Trust Agreement (May 3, 2005) [BKY 05-30073, Dkt. No. 414] (in all further references "Trust Agreement"), 16 (Trust Agreement to be governed by and construed in accordance with Minnesota law).

[11] As a general matter, 11 U.S.C. § 541(a)(1) creates the bankruptcy estate and vests into it "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case", by operation of law.

[12] *See, e.g.,* 11 U.S.C. §§ 704 (duties of trustee in Chapter 7 case); 544, 545, 547-549, 553 (powers of trustee); 1107(a) (granting trustee's rights and powers, and imposing trustee's duties, on debtor in possession under Chapter 11).

And, need it be said, for any relationship to the other type of bankruptcy relief identifiable to core-proceeding status, the Debtor received its discharge under Chapter 11 long ago and it is now a stranger to the controversy at bar.

So, whether it is analyzed as a matter of statutory classification or from more basic structure, the bankruptcy jurisdiction does not lie as to the assets currently in the A.P.I. Trust; and hence it can not lie for a proceeding over a lien asserted to have arisen as to those assets years after the consummation of the Debtor's Plan.  The exclusive federal jurisdiction over the assets of the Debtor's bankruptcy estate ended when those assets were transferred to the A.P.I. Trust.  *In re Skyline Woods Country Club*, 636 F.3d at 471.  Hence, there can be no federal bankruptcy jurisdiction over any dispute regarding the legal status of those assets as encumbered or not.

And there is no core-proceeding status under the one specific statutory category cited by the Trust, 28 U.S.C. § 157(b)(2)(K), "determinations of the validity, extent, or priority of liens."  To ensure a circumscribed scope for this type of core proceeding, a determination of the status of a lien on invocation of that jurisdiction must relate to the assets of a bankruptcy estate currently in administration.  *In re Holmes*, 387 B.R. 591, 598-599 (Bankr. D. Minn. 2008) (relying on holding in *Abramowitz v. Palmer*, 999 F.2d at 1276-1277, that there was no basis for core-proceeding jurisdiction over action involving competing claims to asset of debtor, after allowance of exemption removed asset from bankruptcy estate).[13]  With the windup of the Debtor's bankruptcy estate long-passed and the Trust presently independent of the Debtor, a determination of the Faricy Firm's claimed attorney's lien could not qualify as such.

In the alternative, the Trust cites 28 U.S.C. §§ 157(b)(2)(A) ("matters concerning the administration of the estate") and (O) ("other proceedings affecting the liquidation of the assets of the estate") to support core-proceeding classification.  Under *Cassidy Land and Cattle Co.*, these

---

[13]At a stretch, a proceeding over the continuing attachment of a lien might be a core proceeding if the outcome bore in some way on a statutory right in a debtor to maximize the benefit of a discharge--as a motion for lien avoidance under 11 U.S.C. § 522(f) might be said to do.  There is nothing like that here.

11

categories cannot be stretched to encompass this matter. 836 F.2d at 1132 (expressly "caution[ing] against a broad interpretation of these catchall provisions").

Lastly, under the long-recognized conception of related-proceeding status, there is no basis for exercising that over this matter. Despite the acknowledged breadth of this jurisdiction, the fundamental requirement is lacking here, a bankruptcy estate currently in administration. *In re Barsness*, 398 B.R. at 659-660.

The Trust does not have any viable theories for a federal bankruptcy jurisdiction directly-divined under statute. Given that, a retained jurisdiction in a more connotative sense may not even be possible, to address any current controversy that requires the construction of an order issued during the Debtor's case or an interpretation of the confirmed Plan--notwithstanding the Trust's broad plea that this would enforce the past grants of relief under the Plan and the Confirmation Order. Nonetheless, the Trust argued for this notion quite insistently at the hearing on its application to reopen the case. So, the argument will be treated.

To invoke "post-confirmation jurisdiction" in the bankruptcy court, the Trust relies on several decisions from other districts that are not really on-point with the situation at bar.[14] Using the terminology of those decisions, the Trust argues that Faricy's claim to an attorney's lien "has the requisite close nexus to the Plan because it directly affects the interpretation, implementation, and administration of the confirmed Plan, which on its face bars such claims against the Trust."

While never quite stooping to flattery, the pitch is that there is no forum better-versed to address a defense based on the terms of the Debtor's Plan than the court that got familiar with the original parties and their alignment, confirmed the Plan, gave the relief ancillary to that, and hence got the best understanding of their position under the remedies accorded through confirmation. The unspoken insinuation is that a more accurate interpretation of those documents could not be had from any other court.

---

[14] Specifically, *In re General Media, Inc.*, 335 B.R. 66 (Bankr. S.D.N.Y 2005) and *In re TJN, Inc.*, 207 B.R. 502 (Bankr. D.S.C. 1996).

12

Locally, this sort of suasion has had some appeal in earlier cases. However, the underlying assumption of greatest-competence is certainly not a categorical verity. It cannot justify continuing returns to an earlier forum of bankruptcy on its broad notion alone. *See In re Fifty Below Sales & Marketing, Inc.*, 490 B.R. at 893 n.15 (recalling past reliance on the notion for assumption of post-sale jurisdiction in *In re Eveleth Mines, LLC*, 312 B.R. 634 (Bankr. D. Minn. 2004) and that decision's reversal on jurisdictional grounds at 318 B.R. 682 (B.A.P. 8th Cir. 2004)).

In any event, were this sort of expertise-centered consideration relevant to the exercise of "post-confirmation jurisdiction," there would be no strong case to drive the outcome here on such considerations of judicial efficiency. As noted earlier, the A.P.I. Trust is a free-standing entity that has been in existence for nearly a decade. Its options, protections, powers, and latitude in exercising them are governed by the Plan and the Confirmation Order--documents that are long, and that have their complexities in the interrelation of their terms, but are well-organized and comprehensible nonetheless.

The Confirmation Order does contain a broad injunction, that is there termed "the Supplemental Injunction" but which is in substance one of the channeling injunctions of 11 U.S.C. § 524(g)(1)(B). This Supplemental Injunction prohibits the commencement or continuation of specifically-defined actions "arising out of or relating to any Asbestos Related Claim" against "Released Parties" that are specifically identified by definition. Confirmation Order, 11-13. This injunction redirects all injured parties' claims against the Debtor, the liability insurers that settled with the Debtor to fund the Trust, and other named parties, into the Trust for a defined satisfaction of their claims through its administration. *Id.*; Plan, 14 (definition of "Released Parties").

However, this channeling injunction expressly "shall not enjoin . . . the rights of Entities to assert any Claim, debt, obligation, or liability for the payment of Trust Expenses against the Trust." Confirmation Order, 13. "Trust Expenses" are "all costs, taxes and expenses, that are incurred after the Effective Date, of the Trust . . . including . . . legal, accounting and other professional fees and expenses . . ." Plan, 16. In the first instance the concept of "Trust Expenses" is qualified by reference to "costs . . . and expenses of the Trust attributable or allocable to

13

Asbestos Claims," *id.*, which are injured parties' claims against the Debtor. Plan, 3 (defining "Asbestos Claim"). However, "Trust Expenses" also include "*any other* liabilities, costs or expenses of, or imposed upon, assumed by, or in respect of the Trust . . ." Plan, 16 (emphasis added).

Via another injunction, "all Entities which . . . in the future hold or assert any Third Party Claim" are enjoined from asserting or enforcing liens against "Protected Parties," which by definition include the Trust. Plan, 29; Confirmation Order, 14-15; Plan, 13. For the proceeding at bar, the Trust relies in the main on this injunction for its shield.

However, "Third Party Claims" are defined, Plan, 15, as those against "Released Non-Debtor Parties"--remember, defined, Plan, 14, as the Debtor, settling insurers, and certain parties related to the Debtor but *not* including the A.P.I. Trust--that are "in any way connected with an Asbestos Claim" (again, defined, Plan, 3, as direct claims against the Debtor by injured parties based on asbestos exposure), "any Released Claim" (again, defined, Plan, 13-14, as intercompany claims of the Debtor against its affiliated "Released APi Group, Inc. Parties"), and all claims, liens, or interests *as to the Debtor* that were to be discharged *as to the Debtor* by confirmation (via reference to the Plan's Art. 7.1, at Plan, 25-26).

This complex language requires laborious review. However, the scope of its injunctions is readily-gleaned from its face. So is the identity of parties protected under them and the nature of specific legal procedures from which those parties are protected. What is more, the Plan expressly contemplates that the Trust would retain and use the services of professional persons, and could incur liability for "costs, taxes and expenses" from such retention. Trust Agreement, 11 (authorizing Trustee to "retain and/or consult with counsel"); Plan, 16 (defining "Trust Expenses"). On its face, the injunction against Third Party Claims does not reach such professional persons, their assertions of rights to compensation from the Trust, or any claim of lien against the Trust on such rights. The separate Supplemental Injunction expressly carves out from its ambit the right of such professional persons to seek payment from the Trust. Confirmation Order at 13.

This discussion is just a summary of some provisions culled from the organic documents of the Debtor's reorganization. It is not intended to be a ruling on the merits of the Trust's claimed defense of bar-by-injunction. Rather, it addresses a central point in the Trust's entreaty to the supposed superiority of this court as a forum: the defense is not as simply-supported as the Trust argued, and not as readily-rejected as Faricy insisted; but it is capable of analysis on a basic, methodical construction of the governing documents. This does not require an experienced-derived familiarity with the parties or any expertise in the remedies of Chapter 11 that have been long-seated for the Debtor, to resolve the Trust's asserted defense of bar-by-injunction.

So, even were there a basis to assume related-proceeding jurisdiction on some sort of general retention from the original reorganization process, it would not be necessary to exercise it for an interpretive adjudication. Deference to the abilities of the judiciary of the Minnesota state courts would prompt abstention and remand on even this limited point, despite the Trust's tenacity in arguing it as essential to bankruptcy processes. The current parties' long absence from the forum of bankruptcy probably would drive the outcome. With the primary governance of state law and the lack of any basis of federal jurisdiction other than the bankruptcy jurisdiction,[15] the ready availability of the forum in the Ramsey County District Court would mandate abstention under 28 U.S.C. § 1334(c)(2).

In the end, however, because jurisdiction is lacking it is not necessary to formally abstain under 28 U.S.C. §§ 1334(c)(1) - (2). Remand--a simple ejection back to the Ramsey County District Court--is the proper expedient.

**ORDER**

On the determination that the federal courts lack jurisdiction over this petition for an attorney's lien under Minnesota state law,

---

[15] There certainly would be no diversity of citizenship, 28 U.S.C. § 1332, and no legal question under federal statute or regulation, 28 U.S.C. § 1331.

15

IT IS HEREBY ORDERED that this entire action is remanded to the Ramsey County District Court for all further proceedings.

BY THE COURT:

*/e/ Gregory F. Kishel*

_____
GREGORY F. KISHEL
CHIEF UNITED STATES BANKRUPTCY JUDGE